**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GEORGE R. MARTINEZ,

    Plaintiff,

v.                                                                            CIV. NO. 03-662 WPJ/ACT

SPENCER ABRAHAM,
Secretary of the United States
Department of Energy,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed August 19, 2004 **(Doc. 33)**. Plaintiff alleges he was denied promotions on the basis of his race/national origin and age, and that his employer retaliated against him because he had participated in Equal Employment Opportunity ("EEO") activity, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-632. Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is well-taken and will be granted.

Counts I, IV and V in the Complaint allege violations of the ADEA. Counts I and V are based on failure to promote to positions of "Traffic Management Specialist" and "Convoy Commander/Lead Courier" ("Lead Courier"), respectively. Count IV is an ADEA retaliation claim in connection with "non-selection" to the Traffic Management Specialist position. Counts

II, III and VI are brought under Title VII, with Counts II and VI asserting failure to promote to "Traffic Management Specialist" and "Lead Courier," respectively.  Count III is a Title VII retaliation claim, also with regard to non-selection for the Traffic Management Specialist.  In his response brief,  Plaintiff has conceded to dismissal of all of his retaliation claims on the basis of nonexhaustion.

**Background**

George Martinez worked as a Federal Agent Senior Courier for the United States Department of Energy ("DOE"), National Nuclear Security Administration ("NNSA") Transportation Safeguards Division at the Albuquerque, New Mexico Office.   He is a Hispanic male over the age of 40.  He began his employment with DOE in 1975.  In February 2000, two positions for Lead Courier (GS-084-11/12) with the Transportation Safeguards Division in Albuquerque were advertised in a vacancy announcement.  The ranking factors for the position, also referred to as the "KSA's" (Knowledge, Skills and Abilities), were set out in the vacancy announcement.  Plaintiff submitted an application to be considered for the position.

Seven individuals, including Plaintiff, applied for the positions.  Four of the seven applicants were over the age of 40, and three of the seven were Hispanic males.  The applicants for the Lead Courier position were evaluated by a panel consisting of Ed Sullivan, Mark Romwalter and Phillip Baca who were Unit Commanders in the Albuquerque Courier Section, Transportation Safeguards Division.  Philip Griego, the DOE Human Resources Specialist, sat in on the interviews, but did not voice his opinion concerning which applicants he thought were the best qualified.  His role as the Human Relations Specialist was to ensure that the interviews and discussions by the panel members were done in accordance with all applicable personnel

regulations. The overall evaluation of each of the applicants was based on the application packages, the on-the-job performance of each of the applicants, leadership ability of the applicants, and an interview of each applicant. During the interviews, the same questions were asked of each applicant by the panel members. The panel's function was to rank the applicants based upon interview responses, their applications and how each applicant addressed the KSA's.

 The selecting official for the Lead Courier positions was Ben Best, a Facility Manager for Federal Agent Facility/Western Command, Office of Secure Transportation (formerly Transportation Safeguards Division). Mr. Best selected Anthony Mecca, an Anglo, and Anthony Chavez for the two Lead Courier positions. Mr. Chavez is over 40 years of age and Hispanic. Plaintiff was not selected for either of the positions. Approximately two weeks later, when another Lead Courier position became open, Mr. Best selected David Smith (Anglo), who had also applied for the position. All three of the individuals selected had scored among the highest applicants. On August 3, 2000, Plaintiff filed a Complaint of Discrimination alleging that he was discriminated against on the basis of his age. A few weeks later, Plaintiff added race/national origin (Hispanic) as a basis of discrimination to the August 3rd complaint.

 In March, 2001, a Vacancy Announcement for Traffic Management Specialist, GS-2130-11/12/13 in the Transportation Safeguards Division, Albuquerque, NM was advertised. Plaintiff applied for the position and submitted an Application for Federal Employment. Fourteen applicants were certified as eligible for the position. The selecting official for this position was Everett R. Goodman, Chief of the Transportation Management Division, GS-15, Transportation Management Division at the Albuquerque Operations Office. Mr. Goodman reviewed the applications. He assigned a score based on each applicant's experience and supervisory appraisal

from the interviews, against each of the six KSA's listed in Vacancy Announcement. Mr. Goodman made three selections to fill three vacancies. He selected two Anglo males and a Hispanic male. Plaintiff was not selected for any of the Traffic Management Specialist positions. On July 24, 2001, Plaintiff filed a Complaint of Discrimination alleging discrimination on the basis of race and age.

Legal Standard[1]

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir.1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v. Interstate Brands Corp., 252 F.3d 1111 (10th Cir. 2001).

Plaintiff disputes the purported objectivity of the review and scoring for both positions which were filled by other individuals. The crux of the complaint is Plaintiff's assertion that the rankings done by the panel members for both cases were subjective in nature, and that the basis for the rankings was pretextual for discriminatory criteria.

**Discussion**

Mr. Martinez alleges disparate treatment with regard to the Lead Courier and Traffic

---

[1] The Court recognizes that Defendant requests relief in the alternative. However, Defendant's request for dismissal under Fed.R.Civ.P. 12(b)(6) is moot, given that the Court bases the dismissal of Plaintiff's claims under Fed.R.Civ.P. 56.

Management Specialist positions under both Title VII and the ADEA.  Both types of claims are analyzed under the familiar burden-shifting requirements of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002); Pastran v. K-Mart Corp.,210 F.3d 1201,1205 (10th Cir. 2000) (cases interpreting the ADA retaliation provisions are persuasive authority in Title VII retaliation cases because the statutory provisions are substantially similar); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) (assuming that Title VII's McDonnell Douglas burden-shifting framework applies to ADEA case).

The plaintiff alleging a failure-to-promote claim in both ADEA and Title VII cases must initially establish a prima facie case, demonstrating that: (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir.2000).  There is no dispute as to Plaintiff's protected status under Title VII or the ADEA, either that he is Hispanic, or that he is over 40.  Defendant also concedes that Plaintiff has set forth a prima facie case as to both the Lead Courier and Traffic Management Specialist positions.[2]

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the action.  If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual.  Sanchez v. Denver Public

---

[2] The concession is included in Defendant's argument on Plaintiff's Title VII claims, Defendant does not argue that Plaintiff has *not* set forth a prima facie case on his ADEA claims as well, but it stands to reason that if there is no dispute regarding Plaintiff's over-40 status, Plaintiff would satisfy the remaining factors of the prima facie case, which are similar to those in a Title VII case.

5

Schools, 164 F.3d 527, 531 (10th Cir.1998).  Liability under both Title VII and the ADEA depends on whether the protected trait actually motivated the employer's decision.  Thus, Mr. Martinez is required to show that age (for the ADEA claim) or race/national origin (for the Title VII claim) "played a role in the employer's decisionmaking process and had a determinative influence on the outcome."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (ADEA case) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).[3]  Also, Plaintiff retains the ultimate burden of persuasion, which he may meet by showing directly that the discriminating factor was more likely a determining factor in the employment decision, or indirectly by showing that the employer's proffered explanation is merely a pretext.  See, U.S. Postal Board of Governors v. Aikens, 460 U.S. 711, 714-16 (1983); REA v. Martin Marietta, 29 F.3d 1450, 1455 (10th Cir. 1994).

**I.    Discrimination: Non-Selection to Convoy Commander/Lead Courier**

Since Plaintiff has set forth a prima facie case, the Court's analysis of this claim begins with Defendant's burden to articulate legitimate non-discriminatory reasons for selecting other individuals for the Lead Courier position.  Since the analysis for ADEA claims tracks that used for Title VII claims, the Court's analysis for both will merge unless otherwise noted.

A.    Defendant's Offer of Legitimate, Non-discriminatory Reasons for Non-Selection

Defendant maintains that Mr. Best, as the selecting official, relied on objective, reasonable,

---

[3] The complaint appears to allege discrimination based on "pretext" as opposed to "mixed motive." A "mixed motive" case involves both legitimate and illegitimate motives, whereas a "pretext" case is a case in which the defendant's proffered reasons are either legitimate or pretextual. Kenworth v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992).  In pretext cases, the plaintiff need not show that his protected status was the sole motivating factor in the employment decision; rather he need only show that it was a "factor that made a difference." James v. Sears, Roebuck & Co,, Inc., 21 F.3d 989, 992 (10th Cir. 1994).

non-discriminatory criteria in making his selection for the Lead Courier position. Defendant points to shortcomings in Plaintiff's application, which was not complete. See, Deft's Ex. B. Mr. Martinez dated the application "February 9, 1999" for a job which had an opening date of February 16, 2000. Under "Work Experience," Plaintiff wrote only "I have been employed by DOE as a courier for my entire career! 24 years." No other description was given. For education history, he wrote "info is in my personnel file." In response to a question regarding what training or courses he had taken, Plaintiff stated "I have on the job experience and training for the past 24 yrs!" – without listing any specific course or training. Ex. B. The KSA's addressed by Plaintiff in his application were numbered out of order, and were considered not to be very thorough, in comparison with the other applicants.[4]

For the interview part of the process, the same questions were put to all applicants, and with Mr. Griego's input, the questions were designed to be relevant to the KSA's of the position. Defendant states that Mr. Martinez also did not present himself during the interview as well as the other applicants. Plaintiff appeared nervous, slumped in his chair and at one point in the interview put his arms behind his head and his feet up on the table. According to Defendant, this behavior was noticed and commented upon by Mr. Griego and the panel members after the interview. Deft's Ex. A, ¶ 7; Ex. I, 51:10-20. Plaintiff was very brief in his responses to questions which purportedly were designed to give the applicant an opportunity to delve into his experience and qualifications for the job. The panel members felt that Mr. Martinez did not exhibit the leadership

---

[4] The KSA's for the Lead Courier position are: (1) Knowledge of shipment security to include demonstrated ability in tactical theories and practical application; (2) Ability to deal effectively with team members, with a variety of people, interacting to accomplish defined tasks; (3) Ability to perform as a work leader; and (4) Ability to interpret and apply policies and regulations relative to shipment security. Deft's Ex. A, Attachment 1.

skills which the other applicants demonstrated, and did not present himself professionally during the interview, which resulted in lower scores from the panel. Ed Sullivan stated in his deposition that, prior to the interview, the panel members had actually expected Plaintiff to be a higher-scoring candidate because of his experience, but that turned out not to be the case. Ex. I, 52:12-16.

The panel members evaluated and ranked each applicant based on the application submitted, including the written responses to the KSA's, and the interview performance. Mr. Best as selecting official made the hiring decision based on the panel members' input, selecting Anthony Mecca, Anthony Chavez, and then later, David Smith. Plaintiff received the second lowest evaluation out of seven applicants for the job.

These reasons satisfy Defendant's burden to produce legitimate reasons, non-discriminatory reasons for its non-selection of Plaintiff for the position of Lead Courier.

B.      Were Defendant's Reasons Pretextual?

Plaintiff can still prevail with regard to this summary judgment motion by presenting evidence of pretext, i.e., evidence that Defendant's non-discriminatory reasons for the employment action is unworthy of belief. Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076, 1079-80 (10th Cir.1999). When a plaintiff seeks to demonstrate that a defendant's proffered non-discriminatory reason is pretextual, he is required to show that the tendered reason is not the genuine reason for the employment decision, but rather was a disingenuous or sham reason. English v. Colorado Dept. of Corrections, 248 F.3d 1002, 1010 (10th Cir. 2001). Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In this case, Plaintiff is required to offer some evidence that his Hispanic origin and/or his age played a part in the selection for Lead Courier.

*1.    Plaintiff's "disputed" facts*

Plaintiff claims that the proffered reasons for his non-selection for the Lead Courier position are disputed, and therefore Defendant is not entitled to summary judgment.  These "disputes" are based on Plaintiff's disagreement with the panel members' assessment of his physical presentation during the interview, and of his application package.  In his affidavit, Plaintiff denies being nervous, slumping, or putting his feet on the table.   He maintains that during the interview, he answered questions put to him "completely and to a full extent."  Pltff's Ex. 1. Plaintiff does not dispute the defects in his application pertaining to the brevity of his responses; instead, he simply admits that it "can be argued that Mr. Martinez' application was succinct." Response at 10.  He argues that misnumbering the responses to questions is too insignificant either to be considered a mistake or to support hiring someone else for the position.  To bolster his position that he should have been hired, Plaintiff relies on his experience and the submission of two "superior performance" awards he received during his tenure.

Plaintiff offers no real evidence which would cast a suspicion of pretext on any of the reasons Defendant gives for his non-selection for the Lead Courier position.  All applicants were asked the same questions, and the selecting official was not even present for the interview.  Panel members, including Mr. Griego who sat in on the interview but did not weigh in on the scoring, shared the same observations regarding Plaintiff's application package and his demeanor during

9

the interview. But perhaps most damaging to Plaintiff's "disputes" of fact is the evidence which he contends does not exist -- evidence that David Smith, Anthony Mecca, and Anthony Chavez did any better on their application packages or in their interviews. Response at 10. A comparison of the quality and detail between Plaintiff's responses on his application (particularly those singled out by Defendant as defective), and those from the applications of the three individuals who were selected, are plain and indisputable. Compare Ex. L (attachments to Best Affidavit)with Ex. B (Martinez application). These other applications included continuation sheets for many of the responses, specific listings of job duties, courses and training accomplished, and detailed histories of work, education and employment backgrounds. Plaintiff's argument regarding the insignificance of the defects on his application – misnumbering, misdating, misnumbering questions relating to a KSA, giving very brief responses to questions where full information is warranted -- collapses in the face of these other applications.

   Plaintiff attributes his coming up short on the interview process to the subjective nature of the evaluations. He also appears to believe that any disagreement he has regarding how his application was perceived by the panel members creates a dispute of material fact. This is not so. A challenge of pretext requires a court to look at the facts as they appeared to the person making the employment decision. Kendrick, 220 F.3d at 1230-31; Shorter v. ICG Holdings, Inc.,Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1208 (10th Cir. 1999) (manager's perception of employee's performance is relevant, not plaintiff's subjective evaluation of his or her own relative performance). I agree with Plaintiff that his statement denying slumping and putting his feet on the table during the interview may create disputes of fact over those details, but they are not material given the other aspects of his evaluation which are appropriately considered as part of an

10

employer's perceptions of an employee: how Plaintiff appeared to the interviewers (nervous, slumped), and how the application looked in comparison with those of the other applicants.

2.      *Subjective factors*

This circuit recognizes an inherent problem when an "evaluation is subjective and the evaluators themselves are not members of the protected minority." Pitre v. W. Elec. Co., 843 F.2d 1262, 1271-72 (10th Cir.1988) (citation omitted). Where an otherwise qualified individual is rejected on the basis of subjective considerations, the plaintiff is "entitled to the benefit of an inference of discrimination." Id. at 1271-72 (citation and quotes omitted). For example, in Garrett v. Hewlett Packard Co., 305 F.3d 1210 (10th Cir. 2002), the defendant offered no set of objective criteria by which employees were differentiated in the ranking system, but rather described the process as "a meeting of all supervisors who supervise employees. . . . ." Id., at 1218. In Pitre v. W. Elec. Co., 843 F.2d 1262, 1271-72 (10th Cir.1988), the record showed that the individuals who made the subjective decisions for promotions had discriminatory attitudes and had participated in past discrimination, and that without the subjective explanations, the employer could not account for the inconsistent application of a seniority policy -- which itself was found to be a pretext for discrimination. The problems associated with subjective evaluations does not occur here, because the employment decision regarding Lead Courier position was based primarily on objective factors: responses to weighty questions were very brief and sometimes incomplete, the application was misdated, and a question regarding KSA's for the position was misnumbered and omitted. I agree with Defendant that an impartial reasonable observer (or fact finder sitting on this case) would certainly and without reservation conclude that, compared to the other applications, Plaintiff's application was non-responsive and incomplete in many of the

11

sections of the application.

Moreover, any subjective factors present in the evaluations of the applicants, particularly during the interview, were permissible under the law. Courts have recognized that when management considers individuals for upper level positions, subjective factors must play some role, and their use does not per se constitute discrimination. Pitre, 843 F.2d 1271-72. Based on the KSA's for Lead Courier, the position required leadership abilities and skills. Defendant was thus entitled to assess behavior and demeanor during the interview as part of the ranking process to fill an upper-level job position.

After speaking with the interview panel members, Mr. Best ranked each of the seven applicants, based on discrete criteria: an evaluation of the application packages, responses to the KSA's contained in the vacancy announcement, on-the-job performances, leadership ability of the applicants, and the interview. Plaintiff has not presented any evidence to show any weaknesses, implausibilities, or inconsistencies in the Defendant's proffered legitimate reasons for its selections for the position of Lead Courier. Thus, he has not shown evidence of pretext sufficient to preclude summary judgment on this claim.

**II.     Discrimination: Non-Selection to Traffic Management Specialist**

Fourteen individuals, including Plaintiff, applied for the position of Traffic Management Specialist, and were found qualified. Unlike the Lead Courier position, no interviews were conducted of any of the applicants. Rather, Mr. Goodman, the selecting official, reviewed the applications and scored each applicant's response according to the completeness and accuracy of the response to each KSA. Of the three individuals who were selected, Sean Connors, Steve Weldon, and Henry Soto, two were Anglo males and one was Hispanic, and all three were under

12

40 years of age.

A.      Defendant's Offer of Legitimate, Non-discriminatory Reasons for Non-Selection

Defendant's position is that Plaintiff was not selected for the position for the simple reason that the individuals who were selected achieved much better scores on their applications. Mr. Goodman used a scoring system that gave one point for a KSA response which did not comprehensively address the KSA, two points for a response which somewhat comprehensively addressed the KSA, and three points for a response which included four or more examples to the KSA.[5] Under that scoring system, Plaintiff received the third lowest score out of the fourteen applicants. In his affidavit, Mr. Goodman stated that he did not base the selection on either race/nation origin or age. He further stated that he did not even know the applicant's ages.

Also in his affidavit, Mr. Goodman explained the shortcomings in Plaintiff's application: he considered Plaintiff's response to KSA No.1 as strong, but weak in answering KSA No. 2, and "lacking" in KSA's Nos. 3, 4, and 5. He noted that Mr. Martinez "did not even respond to KSA No. 6. Deft's Ex. E. In contrast, he references portions of the applications submitted by the three individuals who were selected for the position of Traffic Management Specialist: Sean Connors, Steve Weldon, and Henry Soto. Deft's Ex. E, Attachments 4, 5 & 6. An explanation that other applicants received a higher score on their responses satisfies Defendant's burden of

---

[5] The KSA's for the Traffic management Specialist are: (1) Knowledge of DOE, DOD and DOT safety and security regulations pertaining to the handling, storage, compatibility and transportation of nuclear explosives, radioactive material, high explosives and dangerous goods; (2) Knowledge of the TSS classified computer based systems; (3) Knowledge of OTS operations and the ability to analyze OTS programmatic/operational problems and develop solutions; (4) Ability to interact effectively with all levels of AL management and with mid-level managers for DOE Headquarters, DOD, and all other federal agencies; (5) Ability to perform oral presentations and communicate technical matters; and (6) Ability to prepare written technical documents and presentation materials. Deft's Ex. E, Attachment 1.

articulating a facially nondiscriminatory reason for not selecting Plaintiff for the sought-after position.

B.     Were Defendant's Reasons Pretextual?

As with his allegations of age and race/national origin discrimination for the Lead Courier position, Plaintiff must do more than present a prima facie case in order to survive summary judgment. He must offer evidence that the Defendant's reason is a pretext for discrimination. See, Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1260 (10th Cir. 2001). Here, even a cursory comparison between Plaintiff's responses to the KSA's for the Traffic Management Specialist position, and the other applicants would convince any reasonable fact-finder that Defendant's reasons for not selecting Plaintiff were legitimate and non-discriminatory. Aside from the fact that the selected applicants did not omit any of the KSA's, those applications were, on the whole, clearly more detailed on specific duties and abilities and as such, more responsive to the KSA's. Cmp., e.g., Deft's Ex. E, Attachment 5 at 3 (Weldon's application, response to KSA 1) and Attachment 3 at 4 (Connors' application, response to KSA 1), with Attachment 7 at 3 (Martinez' application, response to KSA 1); cmp., Attachment 6 at 9 (Soto application, response to KSA 4) with Attachment 7 at 3-4 (Martinez' application, response to KSA 4).

Plaintiff nevertheless contends that Defendant's reasons for not selecting him were because of his race/national origin and age, on the basis that the scoring sheets used by Mr. Goodman were subjective -- basically a reiteration of his argument with regard to the Lead Courier position. That argument fails for the same reasons. The selection for Traffic Management Specialist was not based on purely subjective criteria. The successful candidate was required to demonstrate a proficiency responding to the six KSA's relevant to the position. Short

of hiring all applicants for the one job and waiting to see who would perform better, the written submissions were a reasonable alternative method to determine who were best qualified for the positions. Each question was separately scored, with three grading options (1,2, or 3) possible for each. Any subjectivity that existed in terms of the grading of the responses was permissible, given the amount of subjectivity that may have been utilized, and the type of position being filled.[6]

None of Plaintiff's exhibits attached to his response establishes a dispute of fact regarding illegal motives by Defendant in the selection process. Plaintiff challenges the outcome of the scoring by stating that the rating guide relied on by Mr. Goodman had not been specifically pre-approved by Human Resources. However, the individual who would have approved it, Raymond Chavez (DOE Human Resource Specialist with the National Nuclear Security Administration) stated in his affidavit that it appears to be consistent with the rating guides or schedules used by selecting officials in the past. Reply, Ex. K. Besides, even had there been a problem concerning the integrity of the selection criteria used, it would not be sufficient to raise a genuine, triable fact concerning the integrity of the selection criteria used, since the same rating guide was applied to all applicants. An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. McKnight v. Kimberly Clark Corp. et al, 149 F.3d 1125 (10th Cir. 1998) (citing Reynolds v. Sch.Distr.No. 1 Denver, 69 F.3d 1523, 1535 (10th Cir. 1995)).

---

[6] Defendant objects to Plaintiff's Exhibit 3, which appear to be a set of scoring sheets reflecting the scores Mr. Goodman gave on the individual questions for each of the applicants. I agree with Defendant that these will not be considered, as they are not properly authenticated and there is no indication they are what they purport to be. Further, even if this material were admissible for summary judgment purposes, it still does not provide support for Plaintiff's position that the selection was based on subjective factors.

Plaintiff's other attempt to discredit the evaluations enough to raise an issue of possible pretext also fails. The fact that Mr. Goodman provided the EEO counselor with a copy of the criteria he used instead of the scoring summary is not material to the issue of whether the rating guides and actual scoring was pretext for carrying out illegal discrimination on the basis of either national origin/race or age.[7] A copy of the scoring summary, which was included by Defendant in the Reply, does not indicate a grading bias, nor can Plaintiff successfully argue that one exists. Deft's Ex. J, Ruiz Declaration, with Goodman Attachment. In fact, the outcome would be considered well-founded by any reasonable juror who had before him or her the applications of the individuals who were selected for the job. Thus, because the facts presented by Plaintiff are not material, they cannot preclude summary judgment.

*2.     Comments regarding age*

The foregoing analysis applies to Plaintiff's ADEA claims as well as his Title VII claims. Plaintiff also mentions comments that were made by certain individuals which allegedly infer a discriminatory bent toward employees who were over 40. According to Plaintiff, Steve Hafner, Manager of the Office of Secure Transportation, referred to Plaintiff and other "Senior Couriers" as the "old guys" at a June 2001 meeting. Ex. G, Pltff's Depo: 57-58. Plaintiff also recalled a statement made regarding the "older guys who put in for other positions," but could not remember exactly when it was made, or who else was present to hear the comment.

These comments are not sufficient to infer discrimination based on age, because Plaintiff cannot show a connection, between the statements and his non-selection. At least one of the

---

[7] The "EEO Counselor's Report" is undated, although the "date counseling report submitted" is listed on the first page of the report as August 2, 2001. Pltff's Ex. 2.

statements (the June 2001 statement) occurred after the selections for both the Lead Courier and Traffic Management Specialist were made.  Also, at least the June 2001 statement was allegedly made during a meeting of around 100 people, so it is not clear how Plaintiff can show that not only were the comments directed at him, but that they have some connection with his non-selection for either of the positions he did not get.  Further, two isolated comments are simply not enough to sustain an inference of discrimination.  See, e.g., Stover v. Martinez, 382 F.3d 1064 (10th Cir. 2004) (two remarks showing bias against Jews not sufficient to show discriminatory animus); Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions"); see also, Trujillo v. Univ. of Col. Health Sciences Center, 157 F.3d 1211 (10th Cir. 1998) (a few isolated incidents of racial enmity are insufficient to survive summary judgment); Stone v Autoliv Asp, Inc., 210 F.3d 1132 (10th Cir. 2000) (comment that it would be difficult for plaintiff who was over 40 to train for another position or to find a new job was a stray remark and insufficient to create a jury issue in an age discrimination case, in light of other circumstances of case).  Accordingly, Plaintiff offers no evidentiary matter from which to infer that he was not selected for either position because of his age.

## Conclusion

In sum, Plaintiff has not presented any disputes of material fact would suggest discriminatory conduct, as to either race/national origin or age, on the part of Defendant, based on his failure to show any evidence that the reasons given by Defendant for his non-selection were pretextual.

In light of my dispositive rulings on the discrimination claims, there is no need to address

other issues raised by Defendants (whether a jury trial exists for ADEA claims, and the appropriateness of damages).

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment **(Doc. 33)** is hereby GRANTED, and the following claims are DISMISSED WITH PREJUDICE, based on the foregoing reasons:

(1) Count I: Non-Selection under the ADEA, for Traffic Management Specialist position;

(2) Count II: Non-Selection under Title VII, for Traffic Management Specialist position;

(3) Count V: Non-Selection under the ADEA, for Lead Courier position; and

(4) Count VI: Non-Selection under Title VII, for Lead Courier;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment **(Doc. 33)** is hereby GRANTED, in that Plaintiff's following retaliation claims are hereby DISMISSED, based on Plaintiff's concession on lack of exhaustion in his response to the motion for summary judgment:

(1) Count III: Retaliation under Title VII regarding the Traffic Management Specialist position; and

(2) Count IV: Retaliation under the ADEA regarding the Traffic Management Specialist position;

**IT IS FINALLY ORDERED** that Plaintiff's claims against Defendant are hereby DISMISSED in their entirety, thus disposing of the above-captioned case. A Judgment in accordance with this Memorandum Opinion and Order shall issue.

_____
UNITED STATES DISTRICT JUDGE